ALFORD, Judge.
The defendant, Dale Neidlinger, was charged by bill of information with unauthorized entry of a place of business, in violation of La.R.S. 14:62.4. He pled not guilty and, after trial by jury, was found guilty as charged. Subsequently, the prosecution filed a habitual offender bill of information; and, after a hearing, the defendant was adjudicated a third felony habitual offender and sentenced to serve six years at hard labor. He has appealed, alleging three assignments of error,[1] as follows:
1. There was insufficient evidence to support the instant conviction.
2. The prosecutor improperly questioned a defense witness about the criminal record of the defendant’s brother.
3. The trial court erred in denying a defense motion for post-verdict judgment of acquittal.
FACTS
At approximately 1:30 a.m. on June 5, 1988, Pearl River Reserve Police Officer *527 Steven Ball was on routine patrol when he noticed a brown, 2-door, Ford LTD parked on the side of Riverside Drive next to Country Girl Seafood Restaurant. As he turned around and approached this vehicle from behind, he observed a subject throw a large object into the passenger side of the car. This subject then went around the front of the car, got in the driver’s side, and sped away, running the stop sign at the intersection of Riverside Drive and Louisiana Highway 41.
With flashing lights and siren, Officer Ball pursued the vehicle in a high-speed chase. In a nearby subdivision, at the intersection of Morgan Bluff Road and Ash-lin Drive, the subject failed to make a left turn, left the road, and struck a street sign and a tree. The subject then fled the scene of the accident by jumping a nearby fence and running away. As the subject emerged from the vehicle, Officer Ball was able to identify him as the defendant, Dale Neidlinger. Officer Ball did not attempt to pursue the defendant because he concluded that, having identified him, he knew where to find him later.
A subsequent registration check of the suspect vehicle revealed that it was owned by the defendant’s father, Hubert Neidlinger. Inside the vehicle were four sacks of crawfish, a pair of bolt cutters, and a red baseball cap. The sacks of crawfish had Country Girl Seafood Restaurant tags on them.
The Pearl River police contacted the owner of Country Girl Seafood Restaurant, Janet Daspit. Ms. Daspit discovered that the padlocks on the seafood cooler and a storage structure containing paper products had been cut and removed from the doors. Six sacks of crawfish and two sacks of oysters were missing from the seafood cooler, which was located behind the main building. Ms. Daspit followed a trail of crawfish behind the restaurant which led to one of the missing sacks of oysters. Later, the Pearl River Police returned the four sacks of crawfish found in the defendant’s car to Ms. Daspit. Two sacks of crawfish and one sack of oysters were not recovered.
The defense presented the alibi testimony of two witnesses, Lou Ann Luke and Joseph Blackledge. They testified that on Saturday, June 4, 1988, the defendant helped them clean up their mother’s property and install a new trailer. Their mother’s trailer had burned down a few days earlier. Ms. Luke testified that she was at her mother’s trailer until midnight, and when she left, the defendant was there drinking beer with her brothers and others.
Blackledge testified that he and the defendant remained at the trailer all night drinking beer with several other people. According to Blackledge, the defendant left the trailer at approximately 9:00 a.m. Sunday, June 5, when Blackledge’s mother gave the defendant a ride home.
The defendant’s father, Hubert Neidlinger, testified that there were two Ford LTDs at his home. He testified that he was the only person who drove the brown LTD and that his son, the defendant, drove the other, a blue LTD. According to Neidlinger, the brown LTD had been stolen from his home sometime between 10:00 p.m. on June 4, and 7:00 a.m. on June 5. He first reported the theft to the Pearl River Police that morning and called them back again that afternoon. When he called the Pearl River Police the second time, they informed him that the car had been in an accident and that they we^e looking for his son.
According to Neidlinger, the brown LTD had very bad brakes, a fact which his son knew. Neidlinger testified that, because of the condition of the brakes on the brown LTD, it would have been impossible to drive at high speed on the roads from the Country Girl Seafood Restaurant to the site of the accident. He stated that it would have been foolish for his son to take the brown LTD (with bad brakes) that night when he could have driven the blue LTD. He testified that he did not recognize the red baseball cap found in the brown LTD and that he informed the Pearl River Police that the defendant never wore a hat. The defendant did not testify at the trial.
*528 ASSIGNMENT OP ERROR NUMBER TWO
In this assignment of error, the defendant contends that the prosecutor improperly questioned a defense witness about the criminal record of the defendant’s brother. He contends that a mistrial should have been granted pursuant to La. C.Cr.P. art. 771 and that his conviction should be reversed because the trial court’s admonition to the jury was insufficient to cure the damage caused by the prosecutor’s prejudicial conduct.
During the cross-examination of the defendant’s father, the following exchange took place:
Q. Mr. Neidlinger, how many sons do you have?
A. Three.
Q. And what are their names?
A. Billy, Hubert and Dale.
Q. And Dale is the youngest; is that correct?
A. Yes.
Q. Where is Billy right now?
A. He’s at Angola.
Q. How long is he going to be there? A. I really don’t know.
Q. About forty-five years, isn’t it, Mr. Neidlinger?
A. You should know. You’re the one that put him there.
[DEFENSE COUNSEL]: All right. Your Honor, at this point I object to this line of questioning. It has no relevance to this case and I’m surprised that Mr. Knight is asking this question.
THE COURT: What’s the relevance? [PROSECUTOR]: I withdraw the question.
THE COURT: Disregard the question and disregard the answer.
Louisiana Code of Criminal Procedure Article 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In the instant case, after the defendant objected to this line of questioning on relevancy grounds, the prosecutor withdrew the question. The defendant made no request for an admonition or a mistrial, nor did he object to this line of questioning as prejudicial. On its own motion, the trial court admonished the jury to disregard the question and answer.
When an objection is sustained and no request for a mistrial or admonition is made at trial, the defendant can not complain of the alleged error on appeal. State v. Thomas, 540 So.2d 1150 (La.App. 1st Cir.1989); State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985). Furthermore, the defendant has made no showing that this improper questioning was of such an extremely prejudicial nature that he was deprived of a fair and impartial trial. See State v. Burge, 486 So.2d 855 (La.App. 1st Cir.), writ denied, 493 So.2d 1204 (La.1986). Moreover, in our view, any possible prejudice caused by this line of questioning was cured by the trial court's admonition to disregard.
For the above reasons, this assignment of error is meritless.
ASSIGNMENTS OF ERROR NUMBERS ONE AND THREE
In assignment of error number one, the defendant contends that the evidence *529 was insufficient to support the instant conviction. In assignment of error number three, he contends that the trial court erred in denying his motion for post-verdict judgment of acquittal, based on the alleged insufficiency of the evidence.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant’s identity as the perpetrator of that crime beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Garner, 532 So.2d 429 (La.App. 1st Cir.1988).
La.R.S. 14:62.4 A provides:
Unauthorized entry of a place of business is the intentional entry by a person without authority into any structure belonging to another and used in whole or in part as a place of business.
In his brief to this court, the defendant contends that the State never proved that he entered the seafood cooler alone or in conspiracy with anyone else. He contends that the evidence was “vague” as to the number of persons in the brown LTD. He notes that Officer Ball only identified him at the accident scene and not the crime scene. He also questions the lighting conditions present when Officer Ball identified him. Finally, the defendant concludes that the circumstantial evidence did not exclude every reasonable hypothesis, i.e., that he did not enter the seafood cooler. He also argues that the mere fact that even if he did throw a sack of crawfish in the brown LTD and flee the scene, this evidence alone does not prove the offense of unauthorized entry into a place of business.
In cases involving circumstantial evidence, the overall evidence must exclude every reasonable hypothesis of innocence. See La.R.S. 15:438; State v. Captville, 448 So.2d 676 (La.1984). Four sacks of craw-fish with Country Girl Seafood tags on them and bolt cutters were found in the brown LTD. Given Ms. Daspit’s testimony that no one was authorized to enter the seafood cooler and that the padlocks to the seafood cooler had been cut, the only reasonable hypothesis of innocence is that someone other than, the defendant actually cut the padlock and entered the seafood cooler. However, the defendant was identified by Officer Ball as he fled from the brown LTD after the wreck. It is true that Officer Ball could not identify the person who threw a large object in the passenger door of the brown LTD on Riverside Drive and he could not at that point say how many people were in the car. However, he chased the car at high speed from Riverside Drive to the scene of the accident; thereafter, only one person emerged from the car, the defendant.
The defendant correctly contends that there was no direct evidence that he cut the padlock and entered the seafood cooler. Perhaps someone else did so. This hypothesis is reasonable, since two sacks of craw-fish and one sack of oysters were never recovered. Perhaps this other person took them. Yet, even if there was an accomplice, this fact would not constitute a reasonable hypothesis of innocence, since under such a scenario the defendant would be guilty of unauthorized entry of a place of business as a principal. See La.R.S. 14:24.
Ms. Luke could only account for the defendant’s presence at her mother’s trailer until midnight on the night of June 4-5. However, Blackledge testified that the defendant was present at the trailer all night. On the other hand, Officer Ball identified the defendant fleeing from the scene of the accident at approximately 1:30 a.m. on June 5. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. In finding the defendant guilty, the jury obviously accepted the identification testimony of Officer Ball and rejected the alibi testimony of the defense witnesses.
*530 After a careful review of the record, we believe that a rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of unauthorized entry of a place of business. See State v. Mussall, 523 So.2d 1305 (La.1988). Accordingly, the trial court did not err in denying the defendant’s motion for post-verdict judgment of acquittal.
These assignments of error are merit-less.
CONVICTION AND SENTENCE AFFIRMED.

. In assignment of error number four, the defendant assigns as error all errors patent on the face of the record. However, in his brief to this Court, the defendant did not address this assignment of error. This Court routinely reviews the record for errors patent, whether or not such a request is made by a defendant. Under La.C. Cr.P. art. 920(2), we are limited in our patent error review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no patent errors.