HIGGINBOTHAM, J.
|gThe defendant, Bobby Christopher Isi-dore, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1 (count 1); and with obstruction of justice (count 2), a violation of 14:130.1(A)(1). He' pled not guilty and, following a jury trial, was found guilty as charged on count 1 and not guilty on count 2. The defendant was sentenced to life imprisonment at hard labor without benefit of parole. The defendant filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating one assignment of error. We affirm the conviction and sentence.

FACTS

On the afternoon of September 7, 2013, Leighton M. Powe, Jr., drove to the Dollar General store on Robert Boulevard in Sli-dell to sell marijuana to people he did not know. Earlier that day, Leighton had called his friend, Kayla Moore, for contacts of people who wanted to buy marijuana. After arrangements for the sale were made, at approximately 3:00 p.m., Leigh-ton drove to. Kayla’s house to pick up an unknown person to accompany him to the sale. Racheal Payne, Leighton’s girlfriend, rode in the front passenger seat, and Leighton’s friend, Kenneth Pere, rode in the back seat with the new passenger.
*1173 When they arrived at the Dollar General, Leighton drove behind the store and parked near a white GMC, extended-cab, pickup truck. Trenton Johnson was sitting in the driver’s seat of the parked GMC truck. Felix Adams was sitting in the back seat, directly behind Trenton, and the defendant was sitting in the back seat next to Felix. The plan among all those in the truck was to rob Leighton of his marijuana, rather than buy it from him. Leighton tucked two bags of about four ounces of marijuana into the top of his pants, got out of his car, and climbed into the empty front passenger seat of the truck. Shortly after Leighton entered the truck, the defendant grabbed Leighton from behind. The defendant wrapped his arms around | ¡¡Leighton’s shoulders and chest and tried to hold him down, but Leighton struggled. Leighton managed to turn sideways toward the back seat, when he recognized defendant and called him by name. At that point, Felix pulled a .38 caliber revolver and shot Leighton in the head, Kenneth and Racheal, who heard the gunshot, jumped from Leighton’s vehicle and ran to the truck. Trenton sped away.
As Leighton sat dying in the front seat, Felix told Trenton where to drive. While Trenton was driving, the defendant removed the marijuana from Leighton’s pants for the three of them to split among each other. Trenton drove to Javery Road, a dead-end road in a wooded, somewhat secluded area off of La. Hwy 11 in Slidell, Louisiana. The defendant and Felix took Leighton out of the truck and left him face down in a ditch on the side of the road. Leighton died a short time later. The defendant left Javery Road on foot. Trenton and Felix drove to the Dollar General on La. Hwy 190, where a vehicle driven by Felix’s friend was waiting. Before Trenton got in the car, he took the paperwork on his truck from the glove box, removed the license plate from his truck, and told Felix to go bum the truck. Felix drove Trenton’s truck to Camelot Drive, doused the vehicle with gasoline, and set it on fire. Camelot Drive is within two miles of Javery Road. The fire did not bum the outside of the truck and did some moderate damage to the inside of the truck. Police found Leighton’s body and the truck on the same day as the robbery and killing.[1]
The defendant did not testify at trial.

ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues that his sentence is excessive.
1/The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if; when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Andrews, 94-0842 (La.App. 1st Cir.5/5/95), 655 So.2d 448, 454. The trial court has *1174 great discretion in imposing a sentence within the -statutory limits, and such a sentence will not be set aside as excessive in the absence .of a manifest abuse .of discretion. - See State v. Holts, 525 So.2d 1241, 1245 (La.App. 1st Cir.1988). Louisiana Code of Criminal Procedure article 894.1 sets forth the ‘factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Broim, 2002-2231 (La.App. 1st Cir.5/9/03), 849 So.2d 566, 569.
The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. State v. Landos, 419 So.2d 475, 478 (La.1982). The trial judge should review the defendant’s personal history, his prior criminal record, the seriousness of the offense, the likelihood -that he will' commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So.2d 1049, 1051-52 (La.1981). On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another [^sentence might have been more appropriate. State v.- Thomas, 98-1144 (La.10/9/98), 719 So.2d 49, 50 (per curiam).
For the defendant’s second degree murder conviction, the trial court imposed the mandatory life sentence. The defendant argues in brief that, while he agreed to take part in a plan to physically overpower “a drug dealer” and to steal his marijuana, and even agreed to use a gun to intimidate him if necessary, he never agreed to kill him. The defendant notes that sentences are to be tailored to the particular circumstances of the offense and of the offender, and that trial courts have the authority to reduce a mandatory minimum sentence if found to be excessive. According to the defendant, his- “relative culpability” should have been taken into account when sentenced, and that he was no more culpable than Trenton, who was allowed to plead to manslaughter.
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by La. R.S. 15:529.1 make's no “measurable contribution to acceptable goals of punishment” or that the sentence amounted to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court reexamined the issue of when Dorthey permits a downward departure 'from the mandatory minimum sentences in the Habitual Offender Law, While both Dorthey and Johnson involve the mandatory minimum sentences imposed under the Habitual Offender Law, the Louisiana Supreme Court has held that the sentencing review principles espoused in Dorthey áre not restricted in application to the penalties provided by La. R.S. 15:529.1. See State v. Fobbs, 99-1024 (La.9/24/99), 744 So.2d 1274, 1275 (per | (¡curiam); State v. Collins, 2009-1617 (La.App. 1st Cir.2/12/10), 35 So.3d 1103, 1108, writ denied, 2010-0606 (La.10/8/10), 46 So.3d 1265.
The defendant contends that the sentencing record should reflect the trial court considered the seriousness of the crime and his past criminal history. The defendant further maintains, the trial *1175 court should have, but failed to, consider his personal history (including age, mental status, dependents, family ties, employment record, and health) and his potential for rehabilitation. There is no need for the trial court to justify a sentence under La.Code Crim. P. art. 894.1 when it is legally required to impose that sentence. As such, the failure to articulate reasons as set forth in Article 894.1 when imposing a mandatory life sentence is not an error; articulating such reasons or factors would be an exercise in futility since the court has no discretion. State v. Felder, 2000-2887 (La.App. 1st Cir.9/28/01), 809 So.2d 360, 371, writ denied, 2001-3027 (La.10/25/02), 827 So.2d 1173. See State v. Jones, 31,613 (La.App. 2nd Cir.4/1/99), 733 So.2d 127, 146, writ denied, 99-1185 (La.10/1/99), 748 So.2d 434; State v. Williams,' 445 So.2d 1264, 1269 (La.App. 3rd Cir.), writ deni&d, 449' So.2d 1346 (La. 1984).
Mandatory sentences have been repeatedly upheld as constitutional and consistent with the federal and state constitutional provisions prohibiting cruel, unusual or excessive punishment.' See State v. Jones, 46,758 (La.App. 2nd Cir.12/14/11), 81 So.3d 236, 249, writ denied, 2012-0147 (La.5/4/12), 88 So.3d 462. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances this defendant is a victim of the legislature’s failure, to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson; 709 So.2d at 676.
| ./There is nothing párticularly unusual about the defendant’s circumstances that would justify a downward departure from the mandatory sentence under La. R.S. 14:30.1(B). The record before us clearly established an adequate factual basis for the sentence imposed. The defendant has not proven by clear and convincing evidence that he is exceptional such that a mandatory life sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the cáse. See Johnson, 709 So.2d at 676. Accordingly, no downward departure from the presumptively constitutional mandatory life sentence is warranted. The sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.
The assignment of error is without merit.

DECREE

For the assigned reasons, Bobby Christopher Isidore’s conviction for second degree murder and his mandatory life sentence are affirmed. .
CONVICTION AND SENTENCE AFFIRMED.

. In a separate trial, Felix Adams was found guilty of second degree murder and sentenced to life imprisonment at hard labor. Adams appealed and this court affirmed his conviction for second degree murder and life sentence. See State v. Adams, 2015-1155 (La, App, 1st Cir. 12/23/15), 2015 WL 9438859 (unpublished). Trenton Johnson pled guilty to manslaughter and was sentenced to 25 years in prison.