# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 KA 1020

## STATE OF LOUISIANA

## VERSUS

## QUENTIN LAJAURNE COLEMAN

*Judgment Rendered:* **APR 1 7 2024**

\*\*\*\*\*\*\*\*

**Appealed from the
32nd Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Case No. 229918**

**The Honorable David W. Arceneaux, Judge Presiding**

\*\*\*\*\*\*\*\*

| | |
|---|---|
| Joseph L. Waitz, Jr.<br>District Attorney<br>Joseph S. Soignet<br>Special Prosecutor<br>Houma, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Lieu T. Vo Clark<br>Mandeville, Louisiana | Counsel for Defendant/Appellant<br>Quentin Lajaurne Coleman |

\*\*\*\*\*\*\*\*

**BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.**

**Lanier, J.**

On December 9, 1993, a jury found the defendant, Quentin Coleman, guilty of second degree murder, a violation of La. R.S. 14:30.1(A)(2), after which he was sentenced to a mandatory term of life in prison without the possibility of parole.[1] The offense occurred in July 1992, when the defendant was sixteen years-old. Following the United States Supreme Court's decisions in **Miller v. Alabama**, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) and **Montgomery v. Louisiana**, 577 U.S. 190, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), the defendant was resentenced to life in prison with the possibility of parole. He now appeals. For the following reasons, we affirm the defendant's sentence.

## FACTS

In July 1992, the defendant and his friend, J.W., attempted to rob C.T. and brothers S.B. and C.B.[2] During the course of the robbery, S.B. was shot and killed. Although C.T. did not see who fired the gun, C.B. testified that it was J.W., not the defendant, who initiated the robbery and shot and killed his brother, S.B.

## EXCESSIVE SENTENCE

In these combined assignments of error, the defendant contends that the trial court's sentence of life in prison with the possibility of parole is excessive and that the trial court erred in denying his motion to reconsider sentence. Specifically, the defendant contends that a life sentence is unconstitutional in his case, where he was sixteen years old at the time of the offense, was not the gunman, and has spent the last thirty years of incarceration working to rehabilitate himself.

---

[1] This court affirmed the defendant's conviction and sentence, and the Louisiana Supreme Court denied the defendant's writ of certiorari. See **State v. Coleman**, 94-2395 (La. App. 1 Cir. 12/15/95), 667 So.2d 1238 (table), writ denied, 96-0034 (La. 4/19/96), 671 So.2d 925.

[2] In the interest of protecting the identities of the juveniles involved in this matter, we refer to them only by their initials. See La. Ch. Code art. 412; La. R.S. 46:1844(W); Uniform Rules of Louisiana Courts of Appeal, Rule 5-2.

2

When the defendant was initially convicted and sentenced in 1993, Louisiana law mandated a sentence of life imprisonment without the benefit of parole for a juvenile tried as an adult and convicted of second degree murder. However, in its 2012 decision in **Miller**, the United States Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders who were under the age of eighteen at the time of the offense. **Miller**, 567 U.S. at 470-473, 132 S.Ct. at 2464-2466. Thereafter, in 2016, the United States Supreme Court determined that **Miller** announced a substantive right of constitutional law that applied retroactively to juvenile offenders. **Montgomery**, 577 U.S. at 212, 136 S.Ct. at 736.

In accordance therewith, the Louisiana legislature specifically amended the Louisiana Code of Criminal Procedure and the Louisiana Revised Statutes to codify **Miller's** holding in La. R.S. 15:574.4(G), as follows:

> (1)[A]ny person serving a sentence of life imprisonment for a conviction of ... second degree murder ... who was under the age of eighteen years at the time of the commission of the offense and whose indictment for the offense was prior to August 1, 2017, shall be eligible for parole consideration ... if a judicial determination has been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1(B) and ...

(a) The offender has served twenty-five years of the sentence imposed.

For such an offender, the district attorney may choose to file a notice of intent to seek a sentence of life imprisonment without the possibility of parole, at which point a hearing shall be conducted to determine whether the sentence shall be imposed with or without parole eligibility. La. Code Crim. P. art. 878.1(B)(1). The sole purpose of the hearing is to determine whether the sentence shall be imposed with or without parole eligibility. La. Code Crim. P. art. 878.1(D).

Herein, the State filed a "Notice of Intent to Seek Juvenile Life Without Benefit of Parole." In response, the defendant filed a sentencing memorandum in

3

which he maintained that his culpability was mitigated because he was convicted as a principal to second degree murder and did not kill anyone. The defendant argued, therefore, that he was not *per se*, the worst of the worst offender. He further argued that despite experiencing significant loss and trauma as a child, including the violent murder of his mother shortly before his eighth birthday, he spent the last thirty years of his incarceration working hard to better himself and his community. Included in the sentencing memorandum was a 2022 notarized affidavit from J.W. in which J.W. admits that he, not the defendant, shot S.B.[3]

The trial court held a resentencing hearing at which the State argued only that the victim's family opposed parole eligibility for the defendant and introduced into evidence the defendant's disciplinary record. The defendant argued that although J.W. was responsible for killing S.B., J.W.'s case was handled in juvenile court such that J.W. was released from custody in 1998, on his twenty-first birthday. While the defendant was not the triggerman, he accepted full responsibility for his role in the harm inflicted on the victim's family. The trial court agreed that the defendant could not "legally be considered the worst of the worst as required by the statute" and that the defendant's disciplinary record suggested that he was amenable to rehabilitation. Accordingly, the trial court held that the State failed to offer sufficient evidence to justify a finding that the defendant was the worst of the worst and resentenced the defendant to life in prison with the possibility of parole. In response, the defendant filed a motion to reconsider sentence in which he argued that a downward departure from the mandatory life sentence was justified in his case. The trial court denied his motion. The defendant now appeals, assigning error to the trial court's denial of the motion to reconsider sentence and the excessiveness of the life sentence.

---

[3] Although the memorandum is included in the record in its entirety, it does not appear that the exhibits attached thereto were entered into evidence at the resentencing hearing.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. A sentence within statutory limits may still be considered excessive if it is grossly disproportionate to the seriousness of the offense, or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, the sentence shocks the sense of justice. **State v. Anderson**, 2022-0587 (La. App. 1 Cir. 12/22/22), 357 So.3d 845, 852, writ denied, 2023-00352 (La. 9/6/23), 369 So.3d 1267.

The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of an abuse of discretion. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing a sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. **Anderson**, 357 So.3d at 852.

The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. On appellate review, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. **Anderson**, 357 So.3d at 852.

In **State v. Dorthey**, 623 So.2d 1276, 1280-1281 (La. 1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated

5

by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In **State v. Johnson**, 97-1906 (La. 3/4/98), 709 So.2d 672, 676-677, the Louisiana Supreme Court reexamined the issue of when **Dorthey** permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law. **Johnson** held that to rebut the presumption that a mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional. That is, because of unusual circumstances, this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. **Johnson**, 709 So.2d at 676. While both **Dorthey** and **Johnson** involve the mandatory minimum sentences imposed under the Habitual Offender Law, the Louisiana Supreme Court has held that the sentencing review principles espoused in **Dorthey** are not restricted in application to the penalties provided by La. R.S. 15:529.1. **State v. Fobbs**, 99-1024 (La. 9/24/99), 744 So.2d 1274 (*per curiam*); see **State v. Collins**, 2009-1617 (La. App. 1 Cir. 2/12/10), 35 So.3d 1103, 1108, writ denied, 2010-0606 (La. 10/8/10), 46 So.3d 1265.

At the resentencing hearing, the trial court noted that it considered the entire record, including the trial transcript, stating "[i]n light of the circumstances of the crime it appears to me that [the defendant's] culpability was diminished in light of the other circumstances and other people involved." The trial court further noted the defendant's limited disciplinary infractions, which decreased in frequency and severity over the course of his incarceration. Thus, finding that the defendant could not be considered the "worst of the worst" offender, the trial court found that a

6

sentence of life without parole was not appropriate and amended the defendant's sentence to include parole eligibility.

While the defendant argues that a life sentence, even with the possibility of parole, is excessive, we disagree. The legislature stated that a **Miller/Montgomery** hearing's sole purpose is to determine whether the existing life sentence should be imposed with or without parole eligibility. La. Code Crim. P. art. 878.1(D). **Miller** and its progeny do not entitle a defendant to be resentenced to a fixed number of years. Rather, **Miller** requires simply that a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest possible penalty for juveniles who have committed a homicide offense. See **State v. Simmons**, 2011-1810 (La. 10/12/12), 99 So.3d 28 (*per curiam*); **State v. Johnson**, 2019-0969 (La. App. 1 Cir. 8/6/20), 311 So.3d 370, 374, writ denied, 2020-01052 (La. 12/7/21), 328 So.3d 430.

Furthermore, the defendant herein has failed to demonstrate that he is entitled to a downward departure from the mandatory minimum sentence of life imprisonment. The defendant asserts that his childhood trauma, youth, role in the crime, and efforts towards rehabilitation[4] qualify him for a downward departure. While compelling, these factors were precisely those contemplated by the United States Supreme Court in **Miller**, which are broadly applicable to juvenile offenders serving mandatory life sentences. As such, they were properly considered by the trial court as evidence that parole eligibility was appropriate in the defendant's case. However, we cannot say that this defendant is a victim of the legislature's failure to create a meaningfully tailored sentence. Rather, the legislature's codification of **Miller** is in itself a meaningfully tailored path toward reprieve for juvenile offenders

---

[4] Exhibits attached to the defendant's sentencing memorandum indicate that while incarcerated the defendant obtained his high school diploma while also completing several other rehabilitative programs and developing his own curriculum for a rehabilitative program entitled "Failing Forward."

7

who, like the defendant, made a terrible choice at a young age and who have since proven themselves worthy of a second chance. Accordingly, the trial court did not err in denying the defendant's motion to reconsider sentence. Moreover, the defendant's sentence of life imprisonment with the possibility of parole is not excessive. These assignments of error are without merit.

**SENTENCE AFFIRMED.**